# Carbaugh v. Sipes

*David C. Cleaver,* for plaintiffs.
*John McD. Sharpe Jr.,* for defendants.

HERMAN, *J.,* February 6, 1996—The parties are owners of adjoining properties in a housing development. The plaintiffs sought injunctive relief and/or damages resulting from the defendants' violation of a restrictive deed covenant requiring specific side setback distances between lots. Following a non-jury trial, we issued an opinion, order and decree nisi denying injunctive relief and awarding the plaintiffs $8,000 in damages. The defendants filed exceptions to the decree nisi and the parties submitted written argument to the court.

The defendants take exception to the valuation figures offered as evidence at trial by the plaintiffs' expert witness, Ronald Richards. Richards is a licensed realtor with expertise in real estate values. Although he was not a certified appraiser of real estate, he had closed approximately 260 transactions in Fulton County, including three in the parties' development. Richards testified the current value of the plaintiffs' lot, if the defendants had not violated the setback, would be $18,500. The defendants contend this figure was based on mere conjecture and speculation rather than objective grounds and we should not have placed any weight on the valuation. We disagree.

Richards' valuation was based on his experience working with buyers in Fulton County and his familiarity with the plaintiffs' lot and the development as a whole. He testified that a lot two blocks from the plaintiffs' lot sold for $22,000 in February 1994. His professional opinion was that potential buyers generally prefer a property where their neighbor's house does not impinge

upon their own space and privacy. He testified as follows:

"Q. Do you have a reason why you are putting the [current] value at $10,000 to $11,500 with the encroachment?

"A. Yes. My reason being that I have purchased and built on a lot of property. I would not like the fact that my house is going to be 15, 17 feet away from someone else's so in knowing buyers I know the buyers would feel that way, feel they would have to move their house over 30 feet." (N.T. December 22, 1994, p. 77.)

Despite Mr. Richards' casual manner of speaking, our review of his testimony as a whole indicated his valuations were grounded in his experience in the real estate field. His figures were not based on mere conjecture or speculation and therefore we did not err in placing weight on his testimony.

The defendants next contend we should have valued the plaintiffs' lot as of the date of the defendants' violation of the covenant. The plaintiffs bought the lot on December 28, 1991 for $12,000. The defendants contend the $8,000 award is excessive in relation to current market conditions since it gives the plaintiffs two-thirds of their original purchase price. Again, we disagree. The defendants' violation of the covenant is ongoing; the house remains the same size and in the same location as when it was first built. Rather than compel the defendants to remove 13 feet of their house which encroaches onto the setback area, we awarded plaintiffs damages for an injury which is permanent in nature. We see no error in this finding.

The defendants' expert witness, Barbara Horn, was a certified real estate appraiser. She testified she was familiar with the lots in question but had not attempted

to value the plaintiffs' lot. She stated the effect of the setback violation was an intangible not capable of objective measurement. She was reluctant to concede that a party unable to build a larger house because of a neighbor's violation would suffer discernible damages. We placed limited weight on her testimony.

In valuing the plaintiffs' lot without the violation at $18,500, Mr. Richards assigned a value of $3,000 to preconstruction fill obtained by the plaintiffs at no cost. The plaintiffs' evidence was ambiguous as to the purpose of this fill, which we find was twofold: to raise the level of the lot to allow for water drainage and to ensure the lot was visually compatible with the defendants' lot. We are constrained to note the plaintiffs presented scant evidence as to what portion of this fill was necessitated by the defendants' violation of the setback area, (resulting in the steep grade between the properties) and what portion of the fill would have been necessary for drainage and aesthetics regardless of such a violation. By the same token, the defendants failed to cross-examine Mr. Carbaugh about the precise purpose of the fill and presented no evidence on the matter. Given the parties' failure to adequately develop this aspect of the evidence, we find we erred in unreservedly incorporating the full $3,000 into the $18,500 valuation. However, we did spend a substantial amount of time viewing the properties during the trial in the presence of the parties and their counsel and had ample opportunity to examine both lots in relation to each other and in relation to the street. We conclude that 45 percent of this fill was necessary to compensate for the defendants' violation of the setback and 55 percent would have been necessary regardless of the defendants' actions. Therefore, instead of incorporating the full $3,000 into the $18,500 figure offered by Mr.

Richards, the proper percentage of fill attributable to the defendants' violation is $1,350, and plaintiffs are responsible for $1,650. From plaintiffs' current loss of $7,750 ($18,500 minus $10,750) is subtracted the $1,650, leaving $6,100 as plaintiffs' lost value. Add to that the cost of the survey, and the proper damage award is $6,350 rather than $8,000.

The defendants reassert their reliance on *Jones v. Park Lane For Convalescents Inc.*, 384 Pa. 268, 120 A.2d 535 (1956), which distinguished between restrictions on the type and number of buildings to be erected on a piece of land and the subsequent use of those buildings. For reasons outlined in our prior opinion, we do not find that case dispositive and gave it no weight.

The defendants also take issue with our statement that the burden rests with the defendants to prove that a significant benefit to the plaintiffs would not be achieved by the covenant's enforcement. It is well-established that where a violation is intentional, the court determines whether enforcement will result in a significant benefit to the beneficiary of the covenant. The party opposing enforcement bears the burden of proving a significant benefit no longer exists. The covenant will not be enforced if the party opposing its enforcement shows that a change in the surrounding neighborhood or some other factor would make enforcement futile and not produce the benefit it was originally intended to achieve. *Gey v. Beck*, 390 Pa. Super. 317, 568 A.2d 672 (1990); *Schulman v. Serrill*, 432 Pa. 206, 246 A.2d 643 (1968). We cannot agree with the defendants that the plaintiffs at all times bear the burden of proof as to every issue relevant to the case. Having found the instant defendants intentionally violated the covenant, we found they did not establish the covenant

390

had been abandoned by other home builders in the development.

The final step in our analysis was to weigh the benefits of strictly enforcing the covenant as against the harm such enforcement would cause the defendants in requiring them to remove 13 feet of their house. We declined to strictly enforce the covenant because Mr. Sipes' violation of the restrictions was not as deliberate and flagrantly intentional as that of the defendants in other cases upon which we relied. We concluded the more equitable remedy was to award plaintiffs damages in lieu of an injunction and we see nothing erroneous in either our approach or our conclusion.

Based on the foregoing, the plaintiffs' award is reduced from $8,000 to $6,350 and an appropriate order will be attached hereto.

ORDER

Now, February 6, 1996, it is ordered and decreed that plaintiffs' award of $8,000 in damages is hereby reduced to $6,350.